# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2012-1230

STANDARD FURNITURE MANUFACTURING CO., INC.,
Plaintiff-Appellant,

v.

UNITED STATES
Defendant-Appellee,

and

UNITED STATES INTERNATIONAL TRADE COMMISSION,
Defendant-Appellee,

and

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

MAR 14 2012

JAN HORBALY
CLERK

AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL
TRADE, KINCAID FURNITURE CO., INC., L. & J.G. STICKLEY, INC.,
SANDBERG FURNITURE MANUFACTURING COMPANY, INC.,
STANLEY FURNITURE COMPANY, INC., T. COPELAND AND SONS, INC.,
and VAUGHAN-BASSETT FURNITURE COMPANY, INC.,
Defendants-Appellees.

Appeal from the United States Court of International Trade in
consolidated case no. 07-CV-00028, Judge Timothy C. Stanceu.

## PLAINTIFF-APPELLANT'S OPPOSITION TO MOTIONS FOR SUMMARY AFFIRMANCE FILED BY THE UNITED STATES AND AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE

Plaintiff-Appellant Standard Furniture Manufacturing Co., Inc. ("Standard")

respectfully urges this Court to deny the motions for summary affirmance filed by

the United States and American Furniture Manufacturers Committee for Legal

Trade et al. (the "Committee for Legal Trade"). The United States and Committee

for Legal Trade fail to disclose that this Court denied essentially the same motions, filed by the same parties, in an indistinguishable case just two weeks ago. See Order Denying Mot. for Summary Affirmance, Furniture Brands Int'l, Inc. v. United States, Ct. No. 2012-1059 (Feb. 29, 2012) (Ex. 1 hereto). The United States and the Committee for Legal Trade argued in the Furniture Brands case, as they argue in their present motions, that the plaintiff-appellant's claims were foreclosed by SKF USA, Inc. v. United States, 556 F.3d 1337 (Fed. Cir. 2009). This Court, however, held that "{b}ecause Furniture Brands raises issues that may not have been determined in SKF, we cannot say that a substantial question regarding the outcome of this case does not exist." Id. at 3. Movants do not deny that Standard's case raises the same issues as Furniture Brands' appeal. Nor do they make any effort whatsoever to explain why a different result should follow in this case. That failure alone – and the resulting inference that the motions were filed solely for purposes of delay – is sufficient reason to deny the motions. Moreover, and in any event, Standard's appeal raises substantial questions that were not addressed by SKF and, accordingly, the motions for summary affirmance should be denied.

## FACTUAL BACKGROUND

Standard is a domestic producer of wooden bedroom furniture ("WBF"). Following an investigation from 2003 to 2004, the U.S. International Trade

Commission ("ITC") determined that the domestic WBF industry was injured by reason of dumped imports from China. See Wooden Bedroom Furniture from China (Final), Inv. No. A-570-890, USITC Pub. No. 3743 (Dec. 2004), http://www.usitc.gov/publications/701_731/pub3743.pdf. Standard filed questionnaire responses with the ITC, including production and sales data that were aggregated by the ITC and used in its analysis of the overall condition of the domestic industry. See id. at 11, III-2. In its questionnaire responses filed with the ITC, Standard indicated that it opposed the petition. See id. at III-2.

Each year from FY2006 through FY2010, Standard filed certifications with U.S. Customs and Border Protection ("CBP") that it was eligible for distributions under the Continued Dumping and Subsidy Offset Act of 2000, Pub. L. No. 106-387, § 1003(a), 114 Stat. 1549A-73 (2000) ("CDSOA"), as an "affected domestic producer" ("ADP") that incurred "qualifying expenditures" even though it was not named in the ITC's listings of ADPs in the WBF case. Each year, CBP denied distributions to Standard but withheld funds for it on the basis that its eligibility to receive funds may be determined by the outcome of pending litigation.

Following CBP's failure to make distributions to it, each year Standard filed a complaint at the Court of International Trade ("CIT"). Standard's amended complaints consolidated into this appeal challenged: (i) the determination by the ITC not to include Standard on its list of ADPs and CBP's failure to make

3

distributions to Standard; (ii) the CDSOA petition-support requirement insofar as it violates the First Amendment and unconstitutionally conditions receipt of a government benefit on a private speaker expressing a specific viewpoint – support for an antidumping petition – and, therefore, is viewpoint discrimination; (iii) the CDSOA petition-support requirement insofar as it violates the Equal Protection Clause because Defendants have created a classification that implicates Standard's fundamental right of speech and Defendants' actions are not narrowly tailored to a compelling government objective and the CDSOA impermissibly discriminates between Standard and other domestic producers who expressed support for the antidumping petition; and (iv) the CDSOA petition-support requirement insofar as it violates the First Amendment as applied to Standard by discriminating against Standard based on expression of its views rather than action (its litigation support). See Standard First Amended Compl., CIT Ct. No. 07-00028, ECF No. 81 (Mar. 23, 2011) (attached to Defendant-Appellee United States's Mot. for Summ. Affirmance (Mar. 9, 2012) ("United States Mot.") as Ex. C.

As alleged in Standard's amended complaints, based on a search of the ITC's public electronic docket, during the ITC's investigation, it appears that four U.S. manufacturers of WBF who were not petitioners took the same action as Standard (i.e., answered the questionnaire), but did not otherwise provide additional argument during the ITC's investigations, a fact not presented in the

4

Furniture Brands appeal. See id. para. 21. These four companies are distinguishable from Standard solely because they expressed support for the petition.

The CIT ultimately granted the United States' and the Committee for Legal Trade's motions to dismiss Standard's case in a 30-page opinion and judgment in which the court analyzed SKF and Supreme Court precedent to conclude that Standard had failed to state a claim upon which relief could be granted. Standard Furniture Manufacturing Co., Inc. v. United States, No. 07-00028 (consol.), Slip Op. 12-21 (Ct. Int'l Trade Feb. 17, 2012) (attached to United States Mot., Ex, A). Standard appealed the CIT's erroneous judgment on February 21, 2012.

## ARGUMENT

### I.    Standard for Summary Affirmance

Summary affirmance of a case "is appropriate, inter alia, when the position of one party is so clearly correct as a matter of law that no substantial question regarding the outcome of the appeal exists." Joshua v. United States, 17 F. 3d 378, 380 (Fed. Cir. 1994)). The United States and the Committee for Legal Trade contend that this Court's decision in SKF USA, Inc. v. United States, 556 F.3d 1337 (Fed. Cir. 2009) "has resolved all of the issues raised in this appeal and controls its outcome." Defendant-Appellees Committee for Legal Trade's Mot. for Summ. Affirmance 2 (Mar. 9, 2012) ("Committee for Legal Trade Mot."); see also

United States Mot. 6 ("<u>SKF</u> controls all of the issues presented and requires rejection of each of Standard's arguments"). This statement is patently incorrect under both the facts and the law and summary affirmance is, therefore, unjustifiable. Indeed, this Court recently rejected this contention outright in denying the motions for summary affirmance filed in the <u>Furniture Brands</u> appeal.

## II. A Substantial Question Exists As to Whether <u>SKF</u> Controls Standard's Case and Whether <u>SKF</u> Has Been Undermined By Recent Supreme Court Precedent

Standard's appeal raises factual issues that are distinct from those at issue in <u>SKF</u>. These include the fact that Standard did not actively oppose the investigation, unlike the plaintiff in <u>SKF</u>, and that Standard has presented facts regarding ADPs who received CBP disbursements but took no action different from Standard other than checking the "support" box. <u>See, e.g.</u>, Standard First Amended Compl. paras. 19-20, 21 (United States Mot., Ex. C). These factual issues were not addressed in <u>SKF</u> and were not the basis, therefore, for its legal conclusions. As a legal matter, <u>SKF</u> did not address all the issues in Standard's appeal and subsequent Supreme Court precedent undermines the foundations of <u>SKF</u>.

### A. Standard Prevails Under <u>SKF</u>

In <u>SKF</u>, a domestic manufacturer argued that the CDSOA's petition-support requirement violated the First Amendment. This Court ultimately rejected that

challenge. The Court did not deny that the statute discriminated on the basis of viewpoint. Although such viewpoint discrimination ordinarily is subject to strict scrutiny, this Court concluded that the lesser standard of the commercial speech doctrine "seem{ed} appropriate," SKF, 556 F.3d at 1355, for three reasons.

First, the Court decided that because "the statute does not prohibit particular speech," cases involving such statutes "are of little assistance in determining the constitutionality of" CDSOA. Id. at 1350. Second, the Court reasoned that in "considering limited provisions that do not ban speech entirely, the purpose of the statute is important," and in the Court's view, the purpose of the petition support requirement "was to reward injured parties who assisted government enforcement of the antidumping laws . . . ." Id. at 1350, 1352. Because the statute was not intended to suppress speech, strict scrutiny did not apply. Id. at 1350. Third, the Court observed that while the commercial speech test was intended for advertising cases, the test "has been applied . . . to regulation of other activities of a commercial nature." Id. at 1355.[1]

The Court then held that the CDSOA was constitutional under commercial speech standards because the government had a substantial interest in enforcing trade laws, and in rewarding private parties who assist in that enforcement

---

[1]  Four judges of this Court expressed skepticism with the application of a commercial speech analysis and voted to review SKF en banc. See SKF USA, Inc. v. United States, 583 F.3d 1340, 1341 (Fed. Cir. 2009).

advanced that interest in a way that was not "overly broad." Id. at 1357. The Court rested its conclusion on an analogy, observing that SKF had undertaken "a role that was nearly indistinguishable from that played by a defendant in a qui tam or attorney's fees award case." Id. at 1358-59. In particular, SKF had submitted evidence and testimony in opposition to the duties and hired counsel to oppose them. Id. at 1359. Denying distributions to such a firm, the Court concluded, was similar to denying attorney's fees to a losing party in litigation, a practice with an unchallenged constitutional pedigree. Id.

As noted, unlike the plaintiff in SKF, Standard did not actively oppose the petition here. Instead, like many producers who were awarded distributions, Standard's involvement in the case was limited to filling out a questionnaire and expressing its opinion about the desirability of imposing duties. Standard First Amended Compl. paras. 19-20. The only difference between Standard and many ADPs is that Standard expressed abstract opposition to the petition in checking a box. Thus, because SKF and Standard are differently situated, SKF did not resolve the constitutionality of the statute's application to Standard. The SKF panel was confronted solely with a domestic producer that actively opposed the petition and, therefore, was the equivalent of a defendant in litigation. SKF, 556 F.3d at 1358. Accordingly, the panel was not called upon, and therefore lacked authority, to resolve the claims of differently situated parties not before the Court. See, e.g.,

Rose Acre Farms, Inc. v. United States, 559 F.3d 1260, 1271 (Fed. Cir. 2009). That the panel adopted a "saving construction" to resolve the claim before it did not somehow authorize it to issue an advisory opinion on questions not before it.

In fact, Standard's claims are entirely compatible with both the holding and the reasoning of SKF. A firm that does no more than fill out a questionnaire is nothing like a qui tam defendant – it is, instead, the equivalent of a witness. There should be no question, however, that the Constitution forbids Congress from compensating witnesses only if they publicly state support for the prosecution. Certainly, there is no established practice of such discrimination. Cf. 28 U.S.C. § 1821 (federal witness fee provision, making no such distinction). Nor is there any Supreme Court authority suggesting that "such awards are generally permissible under the First Amendment." SKF, 556 F.3d at 1356 (emphasis supplied).

The United States and Committee for Legal Trade also contend that PS Chez Sidney, LLC v. U.S. Int'l Trade Comm'n, No. 08-1526, 2010 WL 4365784 (Fed. Cir. Oct. 28, 2010) "leaves no doubt that SKF authoritatively rejected Standard's constitutional arguments." Committee for Legal Trade Mot. 7; United States Mot. 8 (making similar assertion). Chez Sidney was an unpublished decision that established no circuit precedent at all, did not discuss any intervening Supreme Court decision, and, in fact, did not consider any constitutional argument,

9

including any as applied challenge of the type raised by Standard, as the parties stipulated that no constitutional issues needed to be resolved. See Pl.-Cross Appellant PS Chez Sidney LLC's Reply Mem. in Support of Mot. to Lift Stay 1-2, PS Chez Sidney, LLC v. U.S. Int'l Trade Comm'n, No. 2008-1526 (July 2, 2012). That case cannot, therefore, serve as justification for summary affirmance in Standard's appeal.

## B. Recent Supreme Court Decisions Fatally Undermine SKF

Even if the Court does not find that Standard succeeds under SKF, it must examine SKF anew in light of recent Supreme Court decisions. In asserting that there are no significant issues of law remaining in the wake of SKF, the United States and the Committee for Legal Trade utterly ignore Standard's substantial arguments that the critical foundations of that case have since been vitiated by a series of Supreme Court decisions. The intervening decisions make clear that a statute like the CDSOA – which discriminates on the basis of viewpoint on questions of public concern in distributing government funds – is subject to strict scrutiny and, in any event, will fail even the lesser scrutiny of the commercial speech doctrine.

### 1. The CDSOA Is Subject to Strict Scrutiny

This Court declined to apply strict scrutiny in SKF because it: (1) discriminates in distributing benefits, rather than directly banning speech; (2) was

not intended to suppress speech; and (3) involved commercial activities. See SKF, 556 F.3d at 1350, 1355. The Supreme Court has recently rejected these reasons for denying strict scrutiny to statutes that discriminate on the basis of viewpoint.

First, in Sorrell v. IMS Health, Inc., 131 S. Ct. 2653 (2011), the Supreme Court held that the constitutional test does not vary depending on whether the government bans, or merely burdens, speech. Contra Standard, Slip Op. 12-21, 2012 Ct. Int'l Trade LEXIS 22 at *32-35. In Sorrell, the Supreme Court struck down a Vermont statute that prohibited data mining companies (but not others, like insurance companies) from disclosing certain prescription data. The Court explained that "heightened judicial scrutiny {was} warranted" because the statute imposed a "content-based burden on protected expression." Sorrell, 131 S. Ct. at 2664. Critically, the Supreme Court explained that "the distinction between laws burdening and laws banning speech is but a matter of degree and that the Government's content-based burdens must satisfy the same rigorous scrutiny as its content-based bans." Id. (citations omitted).

Days later, the Supreme Court illustrated that teaching in Arizona Free Enterprise Club's Freedom Club PAC v. Bennett, 131 S. Ct. 2806 (2011), striking down a state statute that increased public funding for candidates facing well-funded opponents. There, as here, the state burdened speech by withholding benefits from disfavored speakers and subsidizing competitors (the CDSOA not

11

only withholds distributions from Standard, but gives the money it otherwise would receive to its competitors). The Court rejected any claim that such a law is subject to lesser scrutiny because it did not ban speech. Id. at 2821-22.

The CIT attempted to distinguish Arizona Free Enterprise on the ground that the case involved political speech. See Standard, 2012 Ct. Int'l Trade LEXIS 22, at *35-38. But as Sorrell demonstrates, the principle that discriminatory burdens on speech are subject to the same scrutiny as outright bans applies even to commercial speech. If there were any doubt, the Supreme Court dispelled it in Snyder v. Phelps, 131 S. Ct. 1207 (2011). There, the Supreme Court explained that "speech on public issues," like political speech, "occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." Id. at 1215 (citation omitted). One needs to look no further than the President's 2012 State of the Union address to conclude that unfair trade disputes are matters of public concern and implicate political speech. See, e.g., SKF, 556 F.3d at 1361 (Linn. J. dissenting).

Second, the Supreme Court's recent decisions also reject the SKF court's assumption that lack of a suppressive purpose is a reason to apply lesser scrutiny to a facially discriminatory statute. In Holder v. Humanitarian Law Project, 130 S. Ct. 2705 (2010), the Court acknowledged that in prohibiting Americans from providing material support for terrorist organizations, Congress had not "sought to

suppress ideas or opinion in the form of 'pure political speech.'" Id. at 2723.

Nonetheless, the Supreme Court rejected the government's plea for intermediate

scrutiny – the same as applied in SKF, compare SKF, 556 F.3d at 1355 & n.28

with Sorrell, 130 S. Ct. at 2723-24 – explaining that intermediate scrutiny is not

"the applicable standard for reviewing a content-based regulation of speech."

Sorrell, 131 S. Ct. at 2723. Sorrell also explained that although "Vermont's stated

policy goals may be proper," heightened scrutiny was warranted because "{b}oth

on its face and in its practical operation, Vermont's law impose{d} a burden based

on the content of speech and the identity of the speaker." Id. at 2665, 2770.

Third, the Supreme Court's decisions in Citizens United v. Federal Election

Comm'n, 130 S. Ct. 876 (2010) and Sorrell, make clear that the lesser scrutiny of

the commercial speech doctrine does not apply to measures that discriminate on

the basis of viewpoint on matters of public concern, even when the speaker is a

commercial entity.

### 2. Sorrell Makes Clear the CDSOA Fails the Commercial Speech Test

Finally, even if the commercial doctrine applies, the SKF Court's reading of

that doctrine cannot stand in light of Sorrell. Like the statute invalidated in Sorrell,

the CDSOA provides distributions to "all but a narrow class of disfavored

speakers." Sorrell, 131 S. Ct. at 2668. SKF concluded that such discrimination

13

was permissible because there was a sufficient fit between the categories drawn by the statute and Congress's legitimate interest in rewarding those who assist an antidumping investigation. SKF, 556 F.3d at 1357-59. The Court did not dispute, however, that firms like Standard provide the identical level of practical support for an investigation as others who receive distributions (i.e., filling out a questionnaire and taking no steps to impede the investigation), yet are denied a distribution solely because they expressed abstract opposition to the government's proposed duties. That disconnect between Congress's purported objective and the means chosen, this Court concluded, did not render the statute unconstitutional because Congress had a "rational" basis for the distinction. Id. at 1360.

In Sorrell, however, the Supreme Court clarified that the fit requirement is much more demanding when a statute discriminates on the basis of content. The Court ruled that even if the commercial speech test permits content-based regulation sometimes (for example, in the false advertising context), that relaxed standard does not apply to viewpoint discrimination. Sorrell, 131 S. Ct. at 2672. Instead, the Court held that a statute will fail commercial speech scrutiny if the government "offers no explanation why remedies other than content-based rules would be inadequate" to fulfill is legitimate interests. Id. at 2669.

The CDSOA unambiguously fails that test. Neither the government, nor SKF, has offered any neutral justification for why a legislature intent on

14

encouraging firms to support its investigation, and believing that filling out a questionnaire is sufficient support to warrant a reward, would make a distinction between those who provide that assistance based on whether the firm also supported or opposed the government's enforcement agenda. Nor has the government or this Court claimed that an abstract expression of support or opposition lends any practical support for, or detriment to, an investigation.

In short, Arizona Free Enterprise and Sorrell establish that the same First Amendment test applies whether the government bans speech or simply burdens it by withholding funds from disfavored speakers. Humanitarian Law Project and Sorrell further hold that lack of a suppressive purpose does not reduce the scrutiny applied to discriminatory statutes. Snyder teaches that all speech on matters of public concern merits the highest First Amendment protection. And Sorrell illustrates that viewpoint-discriminatory statutes fail even the lesser scrutiny of the commercial speech test when the relevant speech is not false or misleading. Because SKF cannot be squared with these principles, Standard is likely to prevail in its claim that the CIT erred in applying SKF to dismiss Standard's claims.

## CONCLUSION

The United States and the Committee for Legal Trade have failed to acknowledge this Court's recent decision denying a virtually indistinguishable motion for summary affirmance and make no effort to brief a principal issue on

appeal – whether <u>SKF</u> remains good law in light of intervening Supreme Court decisions. A party seeking the extraordinary remedy of summary affirmance owes this Court greater diligence. But in any event, as shown above, Standard's appeal raises a number of significant questions that warrant full briefing and argument. Accordingly, this Court should promptly deny the motions for summary affirmance filed by the United States and the Committee for Legal Trade.

Respectfully submitted,

*Of Counsel*:
Kevin Russell
Goldstein & Russell, P.C.
5225 Wisconsin Ave., NW, Ste. 404
Washington, D.C. 20015

March 14, 2012

Kristin H. Mowry
Jeffrey S. Grimson
Jill A. Cramer
Susan Lehman Brooks
Sarah M. Wyss
Keith F. Huffman[*]
MOWRY & GRIMSON, PLLC
5335 Wisconsin Ave., NW, Ste. 810
Washington, DC 20015
*Counsel to Standard Furniture Mfg. Co., Inc.*

[*] Admitted only in New York ; DC admission pending. Practice directly supervised by principals of the firm admitted to D.C. Bar

FORM 9.  Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

STANDARD FURNITURE v. UNITED STATES

No. 2012-1230

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

appellant Standard Furniture Manufacturing Co., Inc. certifies the following (use "None" if applicable; use extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:

Standard Furniture Manufacturing Co., Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Standard Furniture Manufacturing Co., Inc. is the real party in interest.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4. ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Mowry and Grimson, PLLC (Jeffrey S. Grimson, Kristin H. Mowry, Jill A. Cramer, Susan Lehman Brooks, Sarah M. Wyss, Keith HUffman, Jodi Herman); Goldstein, Russell & Howe (now Goldstein & Russell, PC) (Kevin Russell)

_____
Date

_____
Signature of counsel

Jeffrey Grimson
Printed name of counsel

Please Note: All questions must be answered
cc: Joseph Dorn, Jessica Toplin, Patrick Gallagher

# EXHIBIT 1

# United States Court of Appeals
# for the Federal Circuit

---

**FURNITURE BRANDS INTERNATIONAL, INC.,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee,*

AND

**UNITED STATES INTERNATIONAL TRADE COMMISSION,**
*Defendant-Appellee,*

AND

**AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE AND VAUGHAN-BASSETT FURNITURE COMPANY, INC.,**
*Defendants-Appellees.*

---

2012-1059

---

Appeal from the United States Court of International Trade in case no. 07-CV-0026, Judge Timothy C. Stanceu.

---

## ON MOTION

---

Before REYNA, *Circuit Judge.*

## **ORDER**

Defendants-Appellees American Furniture Manufac-
turers Committee for Legal Trade and Vaughan-Bassett
Furniture Company, Inc. (collectively, "the Committee for
Legal Trade") and Defendant-Appellee United States
move for summary affirmance of the United States Court
of International Trade's judgment dismissing Furniture
Brands International, Inc.'s ("Furniture Brands") com-
plaint for failure to state a claim upon which relief can be
granted. The United States International Trade Commis-
sion responds in favor of summary affirmance. Furniture
Brands opposes. The United States and the Committee
for Legal Trade reply.

At issue is whether this court's determination in *SKF
USA, Incorporated v. United Sates Customs and Border
Protection*, 556 F.3d 1337 (Fed. Cir. 2009) ("*SKF*"), fore-
closes Furniture Brand's appeal.[1]

Summary disposition of a case "is appropriate, *inter
alia*, when the position of one party is so clearly correct as
a matter of law that no substantial question regarding the
outcome of the appeal exists." *Joshua v. United States*
17 F.3d 378, 380 (Fed. Cir. 1994).

---

[1] In *SKF*, this court concluded that the Continued
Dumping and Subsidy Offset Act of 2000 (also known as
the Byrd Amendment) neither violated the Constitution's
equal protection guarantee nor the First Amendment.
The Byrd Amendment provides for the distribution of
antidumping duties collected by the United States to
eligible "affected domestic producers" of the dumped
goods. 19 U.S.C. § 1675c(a) (2000). An "affected domestic
producer" must be "a petitioner or interested party in
support of the petition with respect to which an anti-
dumping duty order . . . has been entered." *Id.* at
§ 1675c(b)(1)(A).

Because Furniture Brands raises issues that may not have been determined in *SKF*, we cannot say that a substantial question regarding the outcome of this case does not exist.

Upon consideration thereof,

IT IS ORDERED THAT:

The motions are denied.

FOR THE COURT

FEB 2 9 2012
_____
Date

/s/ Jan Horbaly
_____
Jan Horbaly
Clerk

cc: David W. DeBruin, Esq.
    Joseph W. Dorn, Esq.
    Jessica R. Toplin, Esq.
    Patrick Gallagher, Esq.

s25

**FILED**
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

FEB 2 9 2012

JAN HORBALY
CLERK

## CERTIFICATE OF SERVICE

I hereby certify service of two copies of Plaintiff-Appellant's Opposition to Motions for Summary Affirmance Filed by the United States and American Furniture Manufacturers Committee for Legal Trade and an Entry of Appearance for Keith Huffman via hand delivery this 14th day of March, 2012 upon the following parties:

**Jessica R. Toplin, Esq.**[1]
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

**Patrick V. Gallagher, Jr., Esq.**
U.S. International Trade Commission
Office of the General Counsel
500 E Street, SW
Washington, DC 20436

**Joseph W. Dorn, Esq.**
King & Spalding, LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006-4706

Jeffrey S. Grimson
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, DC 20015
202-688-3610 (ph)
trade@mowrygrimson.com
*Counsel to Standard Furniture Mfg. Co., Inc.*

---

[1] Service made to physical address at 1100 L Street, NW., Washington DC 20530.



**Mowry & Grimson, PLLC**

5335 Wisconsin Avenue, NW
Suite 810
Washington, DC 20015
202-688-3610
202-595-8968 (fax)

www.mowrygrimson.com

## MOWRY & GRIMSON

March 14, 2012

<u>VIA HAND DELIVERY</u>
Mr. Jan Horbaly
Clerk of Court
United States Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, DC 20439

      Re:   <u>Standard Furniture Manufacturing Co., Inc. v. United States</u>, Ct. No. 2012-1230

Dear Mr. Horbaly,

Enclosed herewith for filing on behalf of Standard Furniture Manufacturing Co., Inc. are:

- Four copies of Plaintiff-Appellant's Opposition to Motions for Summary Affirmance Filed by the United States and American Furniture Manufacturers Committee for Legal Trade
- Four copies of an Entry of Appearance for Keith F. Huffman

Also attached is a fifth copy of each of the forgoing documents that we request be stamped and returned. All parties have been served in accordance with the attached certificates of service.

Sincerely yours,

Kristin H. Mowry
Jeffrey S. Grimson
Jill A. Cramer
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, DC 20015
202-688-3610 (ph)
trade@mowrygrimson.com
*Counsel to Standard Furniture Manufacturing Co.*